**DYKEMA GOSSETT LLP**
Jon D. Cantor (91852)
jdcantor@dykema.com
Laura P. Worsinger (51859)
lworsinger@dykema.com
Abirami Gnanadesigan (263375)
agnanadesigan@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 457-1800
Facsimile:  (213) 457-1850

Attorneys for Defendant
FIS OPERATIONS, LLC d/b/a/
FRONTIER INTEGRITY SOLUTIONS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER RIVERA, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>     vs.<br><br>FIS OPERATIONS, LLC d/b/a/ FRONTIER INTEGRITY SOLUTIONS, a foreign limited liability company,<br><br>            Defendant. | Case No. 5:19-cv-00237 JGB (SHKx)<br><br>Assigned to Hon. Jesus G. Bernal<br>Riverside, Courtroom 1<br><br>**DEFENDANT FIS OPERATIONS, LLC D/B/A FRONTIER INTEGRITY SOLUTION'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND FOR CORRECTIVE NOTICE**<br><br>Date:     October 7, 2019<br>Time:    9:00 a.m.<br><br>Complaint Filed: February 5, 2019<br>Trial Date:           TBD |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 5
I. INTRODUCTION ............................................................................................. 5
II. STATEMENT OF FACTS ............................................................................... 5
    A. Stipulation to Stay Case Pending Mediation ........................................ 5
    B. Frontier's Amended Arbitration and Class Action Waiver Agreement ............................................................................................... 6
III. ARGUMENT ..................................................................................................... 8
    A. Frontier Acted In Good Faith And in Accordance With NLRB Guidance When It Amended Its Arbitration Agreements ................... 8
    B. Plaintiff's Request To Limit Frontier's Regular Business Communications With Its Employees Is Not Warranted By The Stipulation or Law ................................................................................ 9
    C. The Amended Arbitration Agreement is Not Coercive .................... 11
IV. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
 131 S. Ct. 1740 (2011)..................................................................................... 12

*Cobell v. Norton*,
 212 F.R.D. 14 (D.D.C. 2002) ........................................................................... 10

*Cordúa Restaurants, Inc.*,
 368 NLRB No. 43 (2019) ............................................................................*passim*

*In re Currency Conversion Fee Antitrust Litigation*,
 361 F.Supp.2d 237 (S.D.N.Y. 2005) ............................................................... 12

*Dodona I, LLC v. Goldman, Sachs & Co.*,
 300 F.R.D. 182 (S.D.N.Y. 20014)................................................................... 10

*Epic Systems Corp. v. Lewis*,
 584 U.S. __, 138 S. Ct. 1612 (2018) ............................................................. 8, 9

*Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc.*
 59 F.3d 764 (8th Cir. 1995) ................................................................................ 9

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981) ........................................................................................ 9, 10

*Jones v. National Council of Young Men's Christina Ass'ns of the U.S.*,
 No. 09 C 6437, 2011 WL 1312162 (N.D. Ill. Mar. 31, 2011) ......................... 10

*Kelly v. Pacific Tel. Grp.*,
 1999 WL 332275411 (N.D. Cal. Oct. 20, 1999)................................................. 9

*Montgomery v. Aetna Plywood, Inc.*,
 No. 95 C 3193, 1996 U.S. Dist. LEXIS 9213. (N.D. Ill. July 2, 1996) ............ 10

*Rochlin v. Cincinnati Ins. Co.*,
 2003 WL 21852341 (S.D. Ind. July 8, 2003)................................................... 10

*Zarate v. Younglove*,
 86 F.R.D. 80 (C.D. Cal. 1980)............................................................................ 9

**Statutes**

Fair Labor Standards Act ("FLSA") ................................................................... 7, 8, 11

National Labor Relations Act ("NLRA") ........................................................... 7, 8, 11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 11

Fed. R. Civ. P. 23(d) ..................................................................................................... 9, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Christopher Rivera's ("Plaintiff" or "Mr. Rivera") motion to (1) obtain a protective order prohibiting Defendant FIS Operations, LLC d/b/a Frontier Integrity Solutions ("Frontier") from further attempts to obtain amended "after-the-fact" arbitration agreements; and (2) issue corrective notice to putative collective and class members, rests on a series of unfounded and inaccurate assumptions. Indeed, all of Frontier's complained-of actions were made in strict compliance with recent National Labor Relations Board ("NLRB") guidance in *Cordúa Restaurants, Inc.*, 368 NLRB No. 43 (2019), issued on August 21, 2019.

Moreover, none of Frontier's actions violated the Joint Stipulation to Stay Case Pending Mediation ("Stipulation") entered into by the parties in this matter because none of Frontier's communications with its employees were "about any matter relating to the lawsuit." Instead, those communications were made in the usual course of Frontier's business and in accordance with applicable law.

As such, Plaintiff's request for a protective order prohibiting Frontier to obtain amended arbitration agreements from its inspectors and for the issuance of corrective notice to putative collective and class members should be denied.

## II. STATEMENT OF FACTS

### A. Stipulation to Stay Case Pending Mediation

On April 25, 2019, the parties filed a Joint Stipulation to Stay Case Pending Mediation, which has been extended by this Court until at least September 23, 2019. As part of the Stipulation, the parties "agree[d] not to talk to class members, who do not seek to be represented by Class Counsel, *about any matter relating to the lawsuit*, at least until after an impasse is declared regarding settlement." (emphasis added). *See* Declaration of Jon D. Cantor ("Cantor Decl."), ¶2.

In or around June 2019, acting in good faith, Jon Cantor (counsel for Frontier) had conversations with two former inspectors for Frontier. The purpose of Mr.

Cantor's calls was to obtain information regarding Plaintiff's personal residence. While Plaintiff alleges that he was not living in California, Frontier's counsel had information that stated otherwise, and he was attempting to confirm that information with the other inspectors. When Mr. Cantor called the first inspector, that inspector immediately informed Mr. Cantor that he did not want to speak with him. That conversation ended immediately. When Mr. Cantor called the second inspector, he: (1) introduced himself as an attorney for Frontier; (2) asked if the inspector had been contacted by an attorney for Plaintiff about a lawsuit against Frontier; and (3) informed the inspector that he was seeking basic information about Plaintiff and where he resided. The second inspector volunteered information to Mr. Cantor regarding Plaintiff and regarding the pay scale of Frontier and other companies. Mr. Cantor's conversation with the second inspector lasted less than 3 minutes. Cantor Decl., ¶ 3. At the time that Mr. Cantor made the phone calls to the two inspectors, he did not recall that the Stipulation limited contact with putative collective and class members. Cantor Decl., ¶ 4. Less than a day after speaking with the inspectors, Mr. Cantor received a call from counsel for Plaintiff who reminded him of the terms of the Stipulation. Mr. Cantor shared all of the information about the calls with counsel for Plaintiff, and thereafter did not make any further contact with any putative collective or class member. Cantor Decl., ¶ 5.

As described in more detail below, no Frontier employee has discussed Plaintiff's lawsuit or any matter relating to the lawsuit with any putative collective or class member. *See* Declaration of Doug Moss ("Moss Decl."), ¶ 8.

**B. Frontier's Amended Arbitration and Class Action Waiver Agreement**

On August 29, 2019, in accordance with the NLRB guidance in *Cordúa*, Frontier distributed Amended Arbitration and Class Action Waiver Agreements to its inspectors via email and using DocuSign. Moss Decl., ¶ 6. The Amended Arbitration and Class Action Waiver is substantially similar to the waiver that Frontier routinely

asks its employees to sign at the time of hiring, except that the Amended Waiver and accompanying email transmittal: (1) requested that Frontier's employees waive their right to "opt-in" to any FLSA class action lawsuit and instead agree to proceed to arbitration on each individual's claims; (2) specified that signing it would be a condition for potential new employees if they wanted to be hired; and (3) specified that if any Frontier employees did not sign it within ten days they would be removed from the company's schedule, and if any employee continued to work without signing it, it would constitute assent to the terms of the agreement. Moss Decl., ¶ 7. The relevant provisions of the Amended Arbitration and Class Action Waiver Agreement are as follows:

> **Any claim covered by this Agreement shall be brought and conducted solely on an individual basis and not in a class, multiple plaintiff or representative action, or as a named or unnamed member in a class, consolidated, or representative action. Similarly, the arbitrator may not consolidate more than one party's claims, and may not otherwise preside over any form of a class action or representative proceeding. It is understood and agreed Employee cannot file or opt-in to a collective action under this Agreement, unless agreed upon by Employee and the Company in writing.**
>
> **Notwithstanding the foregoing, a private attorney general representative action may be brought as a class action if mandated by law. Moreover, Employee is not waiving his or her rights under the National Labor Relations Act, and he or she will not be retaliated against for concertedly challenging the validity of this Agreement through class or collective actions.**
>
> **SIGNING THIS AGREEMENT IS A CONDITION OF EMPLOYEE'S EMPLOYMENT OR CONTINUED EMPLOYMENT WITH THE COMPANY. IT IS UNDERSTOOD, ACKNOWLEDGED AND AGREED THAT EMPLOYEE WILL BE REMOVED FROM THE COMPANY'S SCHEDULE IF HE OR SHE DECLINES TO SIGN THIS AGREEMENT WITHIN TEN (10) CALENDAR DAYS OF RECEIPT OF THIS AGREEMENT. IF FOR ANY REASON, EMPLOYEE CONTINUES TO WORK FOR THE COMPANY WITHOUT SIGNING THIS AGREEMENT WITHIN TEN (10) DAYS OF RECEIPT OF THIS AGREEMENT, SUCH CONTINUED EMPLOYMENT SHALL CONSTITUTE EMPLOYEE'S ASSENT TO THE TERMS OF THIS AGREEMENT.**

Moss Decl., ¶ 6, Exh. A.

Nowhere in the Amended Arbitration and Class Action Waiver Agreement, or the email communication transmitting the same, is the lawsuit brought by Mr. Rivera

or any matter relating to the lawsuit mentioned. Moss Decl., ¶ 6, Exhs. A-C.

## III. ARGUMENT

### A. Frontier Acted In Good Faith And in Accordance With NLRB Guidance When It Amended Its Arbitration Agreements

On August 21, 2019, in the case of *Cordúa Restaurants, Inc.*, 368 NLRB No. 43 (2019), the National Labor Relations Board provided guidance on the issue of employment arbitration agreements and their effect on class action matters. In *Cordúa*, a restaurant operator was accused of violating the NLRA when it fired workers for exercising the option to participate in a class action lawsuit that alleged the company violated the FLSA and Texas state law. Prior to the initiation of the lawsuit, the employer had an arbitration agreement in which employees waived the right to "file, participate or proceed" in a class action lawsuit against the company. However, *nine months after the filing* of the lawsuit, *Cordúa* required employees to sign a new arbitration agreement. This new arbitration agreement also barred employees from opting into collective actions, unless the company agreed in writing to allow them to do so. Therefore, the new arbitration agreement not only prohibited employees from initiating or taking an active role in a wage and hour lawsuit, it also prohibited employees from opting in to or collecting damages from any such lawsuit.

In *Cordúa*, the NLRB clarified several issues following the U.S. Supreme Court's ruling in *Epic Systems Corp. v. Lewis*, 584 U.S. __, 138 S. Ct. 1612 (2018), which upheld the use of arbitration agreements with class action waivers in the employment context. Specifically, the NLRB held the following: (1) employers can distribute modified mandatory arbitration *in response* to employees opting in to a collective action under the Fair Labor Standards Act or state wage-and-hour laws; (2) employers can inform employees that failing or refusing to sign a mandatory arbitration agreement will result in them being fired; and (3) employers cannot take adverse action against employees for engaging in concerted activity by filing a class or collective action. The NLRB's guidance was based on the premise that the

8

Supreme Court's 2018 ruling in *Epic Systems* meant that the company could update its arbitration agreement and require employees to sign it *even after a collective action had already been filed against the company*.

Based upon the NLRB's guidance in *Cordúa*, Frontier was within its legal rights to amend the terms of its original mandatory arbitration agreements, and to bar its employees from opting into class or collective actions, *even after Plaintiff filed his Complaint*.

### B. Plaintiff's Request To Limit Frontier's Regular Business Communications With Its Employees Is Not Warranted By The Stipulation or Law

As the United States Supreme Court held in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100. But, as the *Gulf Oil* Court also made clear, "this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Id.* (citation omitted). Thus under Rule 23(d), "[a]n order limiting communications should issue only after a careful weighing of competing interests, and must be based on a clear record and specific findings reflecting the need for such an order." *Kelly v. Pacific Tel. Grp.*, 1999 WL 332275411, at *2 (N.D. Cal. Oct. 20, 1999) (citation omitted). In other words, courts must "take care to ensure that the restraint on expression is 'justified by a likelihood of serious abuses' of the class action device," a justification that virtually always requires a finding that one party has engaged, or is likely to be engaged, in a misleading, coercive, or deceptive communication with class members or putative class members." *Id.*[1] Here, Plaintiff has made no showing (or can he) that there is

---

[1] *See also Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc.* 59 F.3d 764 (8th Cir. 1995) (reversing order granting plaintiff's motion to regulate communications under Rule 23(d) due to insufficient findings regarding "what was misleading and why"); *Zarate v. Younglove*, 86 F.R.D. 80, 103 (C.D. Cal. 1980)

"likelihood of serious abuses" resulting from the implementation of Frontier's updated arbitration agreements because Frontier was only acting in accordance with the law and abided by the terms of the Stipulation in this matter.

Importantly, there is a distinction between communication that is related to a particular case (that is prohibited by the Stipulation) and communication that is made in the ordinary course of business. As such, it is well settled that entities have the right to continue to engage in ordinary business communications, even after a lawsuit is pending. *See e.g. Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-100 (1981); *Jones v. National Council of Young Men's Christina Ass'ns of the U.S.,* No. 09 C 6437, 2011 WL 1312162 (N.D. Ill. Mar. 31, 2011) ("Each side has the right to communicate with putative class members."); It is also well settled that business communications with putative class members in the ordinary course of business are also permissible and appropriate. *See e.g. Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 U.S. Dist. LEXIS 9213. at 11 (N.D. Ill. July 2, 1996) (prohibiting employer from communicating with employee-class members regarding the pending litigation but refusing to prohibit "communications necessary to conduct the daily business" of the employer); *see also Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) (finding that defendants acted improperly by sending notices to class members that had the effect of extinguishing those members' rights to a full and accurate accounting, which was the subject of the pending litigation, but allowing defendants "to continue engaging in the regular sorts of business communications with class members that occur in the ordinary course of business" that did not relate to litigation); *Rochlin v. Cincinnati Ins. Co.*, 2003 WL 21852341, at *20 (S.D. Ind. July 8, 2003) (finding that a questionnaire and letter created and disseminated to employees, represented by

---

(finding the requested relief under Rule 23(d) was overbroad because it "forb[ade] speech that, upon analysis, [did] not pose any serious and imminent threat of interference with fair administration of justice"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 185-86 (S.D.N.Y. 20014) (denying plaintiff's application under Rule 23(d) due to lack of evidence that defendants "made any misleading statements to the class members they contacted.")

counsel post-class certification, in direct response to letters sent to management from employees were appropriate).

The updated class and collective action waiver does not specifically refer to this case, or make any factual statements regarding this case. Moss Decl., ¶ 6, Exh. A. Instead, it is a legal document – a contract – that sets forth certain legal rights and obligations concerning the inspectors' employment with Frontier. It is unquestionably a contract that Frontier enters into during the regular course of its business. The original waiver was created *before* the inception of this case and the amended waiver was implemented and disseminated in accordance with developing labor laws and the *Cordúa* decision. The amended waiver and any accompanying written or verbal communications are not, and have never been, about Plaintiff Rivera, this matter, or any other putative collective or class action. Moss Decl., ¶ 6, Exhs. A-C.

Moreover, in accordance with the Stipulation and the NLRB guidance, Frontier does not intend to invoke the updated arbitration agreements as to those inspectors who have already opted in to this action and who have consented to the claims and damages sought in this case. Those inspectors will not face any adverse actions by not signing the updated arbitration agreements. In fact, the updated arbitration agreements were never sent to (or never intended to be sent to) those employees who have opted in. *Id.*

Thus, the amended waiver and any further communications regarding the same are not properly subject to this Court's regulation under Rule 23 and do not violate the Stipulation entered into by the parties to this case.

**C.     The Amended Arbitration Agreement is Not Coercive**

As set forth above, the NLRA guidance in *Cordúa* expressly authorizes employers to distribute modified mandatory arbitration *in response* to employees opting in to a collective action under the Fair Labor Standards Act or state wage-and-hour laws, even *after* a lawsuit has been filed. For that reason alone, the cases relied upon by Plaintiff for the proposition that a district court has authority to limit post-

11

lawsuit arbitration agreements because those agreements are procedurally and substantively unconscionable are inapposite. For example, Plaintiff relies on *In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237 (S.D.N.Y. 2005) which was decided years before *Cordúa* and the decision in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011), which changed the analysis for unconscionability in arbitration agreements. It is extremely unlikely that the blanket propositions regarding the timing of arbitration agreements and unconscionability discussed in the cases cited by Plaintiff would be upheld today.

## IV.  CONCLUSION

For the foregoing reasons, Frontier respectfully requests that the Court deny Plaintiff's motion to (1) obtain a protective order prohibiting Frontier from further attempts to obtain Amended Arbitration Agreements from inspectors; and (2) for the issuance of corrective notice to putative collective and class members.

Dated:  September 16, 2019

DYKEMA GOSSETT LLP
Jon D. Cantor
Laura P. Worsinger
Abirami Gnanadesigan


By: */s/ Abirami Gnanadesigan*
Jon D. Cantor
Laura P. Worsinger
Abirami Gnanadesigan
Attorneys for Defendant
FIS OPERATIONS, LLC d/b/a/
FRONTIER INTEGRITY SOLUTIONS

12
OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND FOR CORRECTIVE NOTICE
CASE NO. 5:19-CV-00237 JGB (SHKX)

# **CERTIFICATE OF SERVICE**

I hereby certify that on the below date, a copy of the foregoing document was filed electronically, with the Court's CM/ECF, which will provide notice of the same on the parties.

Dated: September 16, 2019     By: */s/ Abirami Gnanadesigan*

Jon D. Cantor
Laura P. Worsinger
Abirami Gnanadesigan
Attorneys for Defendant
FIS OPERATIONS, LLC d/b/a/
FRONTIER INTEGRITY SOLUTIONS