UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 19-237 JGB (SHKx) | Date | October 2, 2019 |
| Title | *Christopher Rivera v. FIS Operations, LLC* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) GRANTING Plaintiff's Motion for Protective Order and for Corrective Notice [Dkt. No. 36] and (2) VACATING the October 7, 2019 hearing.**

Before the Court is a Motion for Protective Order and for Corrective Notice filed by Plaintiff Christopher Rivera. ("Motion," Dkt. No. 36.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion. The October 7, 2019 hearing is VACATED.

## I. BACKGROUND

On February 5, 2019, Plaintiff filed a complaint against Defendant FIS Operations, LLC. ("Complaint," Dkt. No. 1.) The Complaint brings claims for: (1) failure to pay overtime compensation; (2) failure to pay wages; (3) failure to provide compensation for missed meal and rest periods; (4) violations of record keeping requirements; (5) waiting time penalties; and (6) violation of California unfair competition law. (See Complaint.) Plaintiff alleges he is employed by Defendant as a pipeline inspector. (Id. ¶ 15.) Plaintiff brings his suit as a collective action under the FLSA on behalf of himself and "[a]ll Inspection Workers who are or were within the three years prior to the filing of this lawsuit employed by Frontier and paid a day rate with no overtime pay." (Id. ¶ 6.) He also seeks to represent a putative class of "[a]ll Inspection Workers who are or were within the four years prior to the filing of this lawsuit employed by Frontier in the State of California and paid a day rate with no overtime pay." (Id. ¶ 8.)

On April 11, 2019, Defendant moved to compel arbitration. ("Motion to Compel Arbitration," Dkt. No. 24.) Before Plaintiff had opposed the Motion to Compel Arbitration, the parties filed a stipulation to stay the case pending mediation. ("Stipulation," Dkt. No. 26.) The Court granted the Stipulation and stayed the matter for ninety days. (Dkt. No. 27.) On July 24, 2019, the Parties filed a second stipulation, requesting that the stay remain in effect for another sixty days, which the Court granted. (Dkt. Nos. 33, 34.)

On September 5, 2019, Plaintiff filed this Motion. (See Motion.) In support of the Motion, Plaintiff filed the Declaration of Christopher Rivera and the Declaration of Richard J. Burch. ("Rivera Declaration," Dkt. No. 36-2; "Burch Declaration," Dkt. No. 36-3.) Defendant filed its Opposition on September 16, 2019. ("Opposition," Dkt. No. 37.) In support of the Opposition, Defendant filed the Declaration of Jon D. Cantor and the Declaration of Doug Moss. ("Cantor Declaration," Dkt. No. 37-1; "Moss Declaration," Dkt. No. 37-2.) Plaintiff replied on September 23, 2019. ("Reply," Dkt. No. 38.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 83 allows a court to "regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules." That authority allows a district court "to regulate the actions of the parties to a multiparty suit." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172, 110 S. Ct. 482, 487, 107 L. Ed. 2d 480 (1989); see also Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981) (holding that a district court has "both the duty and the broad authority" to exercise control over a class action and the conduct of counsel and parties). Pursuant to its regulatory authority, a district court can "impose limitations [on communication] when a party engages in behavior that threatens the fairness of the litigation." Wang v. Chinese Daily News, Inc., 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 132 S. Ct. 74 (2011). A court may also issue "corrective notices and action to ameliorate confusing or misleading communications." O'Connor v. Uber Techs., Inc., 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013).

## III. DISCUSSION

On August 29, 2019, Defendant sent an email to all Frontier inspectors ("Opt-In Waiver Communication"), including Plaintiff,[1] which stated that all employees would be required to sign Defendant's "Amended Mutual Arbitration and and [sic] Class Action Waiver Agreement," ("Amended Arbitration Agreement"). (Motion 2-3; Rivera Declaration, Exhibits 1 and 2.) The Amended Arbitration Agreement stated=s that "[i]t is understood and agreed Employee cannot

---

[1] Defendant asserts that it did not intend to send the Opt-In Waiver Communication to any inspectors that had opted-in to the instant litigation, and the Opt-In Waiver Communication was sent to Plaintiff by mistake. (Moss Declaration ¶ 6.) The Court concludes that Defendant intended to send the Opt-In Waiver Communication to individuals who had not yet opted-in to this litigation but may have been entitled to do so at a future date—the group relevant for this analysis.

file or opt-in to a collective action . . . ." (Rivera Declaration, Exhibit 2 at 4.)  And it makes clear that employees who do not sign the agreement could be terminated: "SIGNING THIS AGREEMENT IS A CONDITION OF EMPLOYEE'S EMPLOYMENT OR CONTINUED EMPLOYMENT . . . EMPLOYEE WILL BE REMOVED FROM THE COMPANY'S SCHEDULE IF HE OR SHE DECLINES TO SIGN THIS AGREEMENT."  (Id. at 5)  Plaintiff argues that the Opt-In Waiver Communication sending the Amended Arbitration Agreement violated the terms of the Stipulation.  (See Motion at 2.)  Plaintiff therefore seeks (1) a protective order "prohibiting [Defendant] from any further attempts to obtain after-the-fact arbitration agreements" and (2) corrective notice.  (Id.)

The Stipulation signed by the Parties in advance of the stay explicitly prohibits either party from "talk[ing] to class members, who do not seek to be represented by Class Counsel, about any matter relating to the lawsuit."  (Stipulation at 3.)  Defendant argues that because the Opt-In Waiver Communication was "made in the ordinary course of business," it is not related to this case. (Opposition at 10.)  But those attributes are not mutually exclusive: a communication done in the ordinary course can also be related to a specific incident, as is the case here.  Plaintiff's claim is in-part an opt-in collective action.  (See Complaint.)  Because the Amended Arbitration Agreement specifically limits employees' ability to "file or opt-in to a collection action," it could affect employees' ability to participate in the case.  (See Rivera Declaration, Ex. 2.)  A communication that unilaterally changes individual employees' ability to participate in a case undoubtedly "relates to" that case.  See O'Connor, 2013 WL 6407583, at *4 (distinguishing communications that affect litigants' rights from "purely business communications, completely unrelated to litigation that has no substantial effect on class members rights therein" and holding the former appropriate for court control).

Defendant argues that the Opt-In Waiver Communication was permissible under the NLRB's Cordúa opinion, which held that an employer could terminate employees that declined to sign a post-litigation opt-in waiver.  Cordúa Restaurants, Inc., 368 NLRB No. 43 (2019).  But that decision is inapplicable here: there is no indication that the Cordúa parties had any agreement not to communicate with putative class members regarding matters related to the litigation.  The parties in the instant litigation did have such an agreement—and Defendant violated that agreement when it communicated with class members to curtail their ability to participate in this litigation.  Accordingly, the Court concludes that the Amended Arbitration Agreement is unenforceable to prevent opt-ins that would be otherwise valid in this lawsuit.[2]

Plaintiff asserts that corrective action is necessary because the Opt-In Waiver Communication will have a "chilling effect" on additional opt-ins.  (Motion at 12–13.)  The Court agrees: employees who otherwise may have wanted to opt-in may think that they no longer have the right to do so.  Accordingly, the Court GRANTS the Motion.

---

[2] The Court does not decide whether any earlier agreements or similar waivers are enforceable.

## IV.   CONCLUSION

For the reasons stated above, the Court:

1. GRANTS Plaintiff's Motion for a Protective Order;

2. ORDERS Defendant to fully comply with the terms of the Stipulation, including its provision to refrain from communicating with putative class members about matters related to this litigation;

3. ORDERS the Parties to meet and confer regarding appropriate notice to be sent to putative class members regarding their ability to opt-in to this litigation notwithstanding the Opt-In Waiver Communication.  The Parties shall submit a proposed corrective notice plan for the Court's approval no later than October 21, 2019.

**IT IS SO ORDERED.**